STEPHEN V. BOMSE (Bar No. 40686)
steve.bomse@hellerehrman.com
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

NATHAN P. EIMER (*pro hac vice* pending)
neimer@eimerstahl.com
ANDREW G. KLEVORN (*pro hac vice* pending)
aklevorn@eimerstahl.com
CHAD J. DOELLINGER (*pro hac vice* pending)
cdoellinger@eimerstahl.com
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Telephone: (312) 660 7600
Facsimile: (312) 692-1718

Attorneys for Plaintiff
PRAXAIR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PRAXAIR, INC., | Case No. C08 00869 JW |
| Plaintiff, | COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| ATMI, INC. and ADVANCED TECHNOLOGY MATERIALS, INC., | |
| Defendant. | |

COMPLAINT/DEMAND FOR A JURY TRIAL

Plaintiff Praxair, Inc. ("Praxair"), on behalf of its Praxair Electronics division (hereinafter "Praxair Electronics"), files this Complaint against ATMI, Inc. and Advanced Technology Materials, Inc. (collectively, "ATMI") and alleges as follows:

## NATURE OF THE ACTION

1.      Praxair brings this action under the federal antitrust laws for injunctive relief and monetary damages in connection with injuries Praxair Electronics has sustained, and continues to sustain, as a result of ATMI's unlawful, exclusionary, and anticompetitive scheme to preclude competition and monopolize the market for sub-atmospheric gas delivery systems. ATMI's unlawful, exclusionary, and anticompetitive conduct also violates California statutory and common law, which claims are asserted as supplemental claims. Praxair also seeks declaratory and equitable relief as described herein.

2.      ATMI's violation of the antitrust and other laws has been effected through an intentional pattern of anticompetitive conduct, the effect of which has been both to hinder the ability of Praxair Electronics to compete in the relevant market and to eliminate competition. ATMI's unlawful, exclusionary, and anticompetitive conduct includes, *inter alia*, the following:

   i.   interfering with Praxair Electronics' supply of a key dopant gas, isotopically enriched boron trifluoride ("$B^{11}F_3$"), a necessary component in the fabrication of semiconductors, which is the primary end-use for sub-atmospheric gas delivery systems;[1]

   ii.  misusing and abusing a patent registered in a few European countries and enforcement proceedings related thereto to limit competition in the United States, Asia and other parts of Europe; and

   iii. misusing patent litigation as part of an anticompetitive scheme.

---

[1] Praxair Electronics understands that ATMI markets its sub-atmospheric delivery systems in conjunction with Matheson Tri-Gas, Inc. ("Matheson"). According to ATMI's most recent 10-K, ATMI sells its adsorbent-based sub-atmospheric gas delivery systems directly to certain end-users and through an exclusive distribution agreement with Matheson. *See* Annual Report for Calendar Year 2006 on Form 10-K of ATMI, Inc., p. 10. Praxair Electronics believes that ATMI, either acting alone or in concert with Matheson, has blocked the supply of $B^{11}F_3$ from its supplier (Nukem GmbH) through an exclusive supply agreement. For present purposes, and ease of reference, Praxair Electronics refers to the supply agreement as one between ATMI and Nukem, but incorporates Matheson as an agent or co-conspirator of ATMI.

2

3.    Praxair has suffered, and continues to suffer, direct and substantial injury as a result of ATMI's unlawful, exclusionary and anticompetitive conduct. Praxair has also suffered, and is continuing to suffer, irreparable harm as a result of damage to Praxair's goodwill and business reputation, ATMI's interference with Praxair's ability to compete in the relevant market and ATMI's interference with Praxair's First Amendment rights to advertise lawfully.

**PARTIES**

4.    Plaintiff Praxair is a Delaware corporation with its principal place of business in Danbury, Connecticut.

5.    Praxair Electronics is a division of Praxair. It is dedicated to the development of innovative process materials solutions, helping semiconductor manufacturers lower the cost of ownership, reducing environmental impact and improving productivity.

6.    ATMI, Inc. is a Delaware corporation with its principal place of business in Danbury, Connecticut.

7.    Advanced Technology Materials, Inc. is a Delaware corporation with its principal place of business in Danbury, Connecticut.

**JURISDICTION AND VENUE**

8.    Praxair's federal antitrust claims are brought pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages for, and to enjoin, ATMI's violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. This Court has subject matter jurisdiction over these federal antitrust claims pursuant to 28 U.S.C. §§ 1331 and 1337(a).

9.    Praxair's claim for declaratory judgment is brought pursuant to 28 U.S.C. § 2201. This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1337(a).

10.    Praxair's state law claims for unfair competition (including Cal. Bus. & Prof. Code § 17200 *et seq.*) and tortious interference with prospective economic advantage arise from the same conduct on the part of ATMI as Praxair's federal antitrust claims, and thus are part of the same case or controversy as Praxair's federal law claims. This Court, therefore, has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367.

3

11.     This Court has general personal jurisdiction over ATMI because ATMI has substantial and continuous contacts with the State of California and does business there.

12.     In addition, this Court has specific personal jurisdiction over ATMI because many of ATMI's acts which gave rise to Praxair's claims occurred in or affected this District.

13.     Venue in this District is proper pursuant to Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15(a) and 22, and the general federal venue statute, 28 U.S.C. § 1391(b)-(c), because, *inter alia*:

    a.   ATMI transacts business in this district;

    b.   a substantial part of the events or omissions giving rise to the claims occurred in this district;

    c.   ATMI does business with semiconductor manufacturers within the San Jose Division of the Northern District of California;

    d.   ATMI participated in SEMICON West, a leading trade show on advanced microelectronic devices and manufacturing, in each of the years 2003 – 2007; and

    e.   The unlawful conduct complained of herein had a substantial impact within the San Jose Division of the Northern District of California by adversely affecting consumers within the Division.

## INTRADISTRICT ASSIGNMENT

14.     This case should be assigned to the San Jose Division because, as discussed above in ¶ 13, a substantial part of the events which give rise to the claims asserted occurred in this Division. Specifically, the major customers for the products at issue in this litigation are semiconductor manufacturers, a significant portion of which are located within the San Jose Division of the Northern District of California, and ATMI transacts business in the San Jose Division.

COMPLAINT/DEMAND FOR A JURY TRIAL

## THE MARKET FOR SUB-ATMOSPHERIC GAS DELIVERY SYSTEMS

15.    The relevant market in which to assess ATMI's unlawful, exclusionary and anticompetitive conduct is the global production, marketing and sale of sub-atmospheric gas delivery systems. Praxair Electronics and ATMI are competitors in the sale of sub-atmospheric gas delivery systems, which are used in connection with the manufacture and fabrication of semiconductors. Indeed, more than ninety percent (90%) of the semiconductor industry now uses sub-atmospheric gas delivery systems.

16.    Barriers to entry in this market are substantial, including, but not limited to, patents or other legal licenses, difficulty of obtaining essential resources, buyer preferences, high capital entry costs, and economies of scale.

17.    The fabrication of semiconductors requires the implantation of certain ions into a silicon wafer. Such ions can only be implanted into the silicon wafer by exposing it to specialized highly toxic gases, including, but not limited to, arsine, phosphine, and $B^{11}F_3$ (specialty gases used in ion implantation are known in the industry as "dopant gases"). These dopant gases are not fungible. Rather, each is necessary in this process because each of the gases provides different electrical properties. $B^{11}F_3$ accounts for more than forty percent of the gases supplied by Praxair Electronics' sub-atmospheric gas delivery system.

18.    In the past, the dopant gases used in semiconductor manufacture and fabrication were stored in ordinary pressurized cylinders or pressurized tanks. However, because of the toxicity of these gases, the use of such pressurized cylinders posed safety and health risks. For instance, an unintended opening of the outlet valve in an ordinary pressurized cylinder could cause the immediate release of gases into the workplace and environment, leading to potentially serious injury (possibly even death) and environmental risks.

19.    To mitigate such risks, sub-atmospheric gas delivery systems were developed. Such delivery systems allow the release of gas only if a vacuum (*i.e.*, through a line with sub-atmospheric air pressure) is attached to the cylinder containing the gas. Sub-atmospheric gas delivery systems thus offer substantial safety and technical advantages, provide productivity improvements, and are priced at a significant premium to gas delivery systems based on pressurized gas cylinders. Despite

5

the premium price, more than ninety percent (90%) of the semiconductor industry currently uses sub-atmospheric gas delivery systems, instead of traditional pressurized cylinders.

20.     ATMI was the first to market a sub-atmospheric gas delivery system through the use of chemical adsorbent materials (known as the SDS® system). The SDS® patented system was a commercial success. With its introduction of the SDS® system in the mid-1990s, ATMI soon became the sole provider of sub-atmospheric gas delivery systems, creating an initial monopoly position for ATMI.

21.     In the late 1990s, a company called UOP developed the first mechanical-based sub-atmospheric delivery system. This alternative technology to the SDS® system provided the equivalent safety benefits in a novel design and avoided any possible infringement of the SDS® patents. An affiliate of Praxair Electronics purchased UOP's U.S. patents in 2002.

22.     To inject competition into this market, Praxair Electronics completed the development of the mechanical system for the sub-atmospheric delivery of gases (*i.e.*, the use of a valve mechanism), which Praxair Electronics now markets under the brand UpTime®. The UpTime® system is a cylinder with a specialized valve designed to only open when a vacuum is drawn on the outlet of said cylinder. It supplies substantially the same safe delivery as SDS® in a higher volume package. Although Praxair Electronics' UpTime® system is sold in a variety of sizes, the most common holds about 335 grams of gas for $B^{11}F_3$. Once a customer uses all of the dopant gas contained in an UpTime® cylinder, the cylinder is returned to Praxair Electronics for refilling.

23.     Customers purchase the UpTime® system as a package (*i.e.*, customers do not purchase the cylinders and necessary gases as separate components). Pricing is made on the basis of dollars per gram of gas supplied (*e.g.*, $x/g of $B^{11}F_3$), typically without any separate charge for the use of the sub-atmospheric cylinder.

24.     Praxair Electronics' UpTime® system offers substantial advantages over ATMI's SDS® delivery systems. Among other things, Praxair Electronics' UpTime® system has on average sold at about twenty percent (20%) below the prevailing rate for ATMI's SDS® system. It also allows for the use of significantly greater volume of gas per cylinder size, as compared to ATMI's

6

SDS® (thereby increasing semiconductor fabrication productivity) while permitting a greater portion of the gas to be removed from the cylinder (thereby reducing waste and costs).  Put simply, Praxair Electronics believes that the UpTime® system has a lower cost of total ownership to the customer than ATMI's SDS® system.

25.    Because of these advantages, Praxair Electronics' UpTime® system made some initial sales to semiconductor customers.  Notably, more than ninety-eight percent of Praxair's customers had previously used ATMI's SDS® system.

26.    Praxair Electronics' UpTime® system was covered by U.S. Patent Nos. 6,045,115, 6,007,609, and 5,937,895.

27.    ATMI has introduced its own mechanical system for the sub-atmospheric delivery of gases.  It calls this product VAC®, and ATMI has obtained patents for this system in certain European and Asian countries.

28.    Notwithstanding Praxair Electronics' introduction of its UpTime® system, ATMI has continued to hold a dominant position in the market for sub-atmospheric gas delivery systems. It is estimated that ATMI accounts for more than ninety percent (90%) of the global sales of sub-atmospheric gas delivery systems.   In several different instances, ATMI has used its overwhelming market position to foreclose competition and cause injury to Praxair Electronics.  Praxair seeks remedies based on specific instances of misconduct by ATMI.

## ATMI'S ANTICOMPETITIVE CONDUCT

29.    ATMI has unlawfully maintained monopoly power in the market for sub-atmospheric gas delivery systems.

30.    ATMI has attempted to maintain and extend its monopoly in the relevant market by engaging in a wide array of unlawful, exclusionary, and anticompetitive conduct including, *inter alia*, the following:

i.    interfering with Praxair Electronics' supply of $B^{11}F_3$, a key component in the fabrication of semiconductors, which is  the primary end-use for sub-atmospheric gas delivery systems;

COMPLAINT/DEMAND FOR A JURY TRIAL

ii.  misusing and abusing a patent registered in certain European countries and enforcement proceedings related thereto to limit competition in the United States, Asia and other parts of Europe; and

iii.  misusing patent litigation as part of an anticompetitive scheme against Praxair Electronics.

### Interference with Praxair Electronics' Supply of $B^{11}F_3$

31.    $B^{11}F_3$ is particularly important to the manufacture and fabrication of semiconductors. It accounted for roughly forty percent (40%) of Praxair Electronics' sale of gases delivered via its UpTime® system in 2007.

32.    Customers that utilize $B^{11}F_3$ in their sub-atmospheric gas delivery systems require the $B^{11}F_3$ to be of high purity and consistent quality. Consequently, before a customer will purchase a sub-atmospheric gas delivery system, the customer typically subjects the delivery system, including the dopant gases, to a rigorous qualification process in which it is tested for quality, purity, and consistency. Such a qualification process typically may take up to nine months to complete, and costs as much as $100,000 per manufacturing product line. It will be more than one year before Praxair Electronics' alternatively-sourced gas could be qualified with all current customers, assuming customers cooperate.

33.    The qualification process is multi-faceted, including evaluating (1) the dopant gas itself; (2) where the gas is transfilled; (3) the physical cylinder and its connection to the semiconductor manufacturing tool; and (4) the delivery system.

34.    Praxair Electronics has obtained nearly all of the $B^{11}F_3$ used in its UpTime® system from Nukem GmbH ("Nukem"), which is located in Germany. Nukem is, by far, the largest manufacturer of this gas in the world, accounting for the vast majority of available production. In late December 2007, Nukem—which had supplied Praxair Electronics with $B^{11}F_3$ since Praxair Electronics entered the market—unexpectedly informed Praxair Electronics that it would not be able to supply $B^{11}F_3$ at that time because it was in discussions with ATMI (alone or in conjunction with Matheson) regarding an exclusive supply agreement.

COMPLAINT/DEMAND FOR A JURY TRIAL

35.    In late January 2008, Nukem confirmed that it had, for its part, signed an exclusive supply agreement with ATMI at ATMI's insistence and that it would not be able to supply $B^{11}F_3$ to Praxair Electronics. Nukem explained that ATMI was unhappy that Nukem had been providing $B^{11}F_3$ to Praxair Electronics.

36.    Praxair Electronics understands that ATMI currently purchases approximately ninety-five percent (95%) of Nukem's total $B^{11}F_3$ output, while virtually all of the remaining 5% is purchased by Praxair Electronics.

37.    On information and belief, Praxair Electronics understands that ATMI exclusive supply agreement with Nukem purportedly has a two-year term and imposes a substantial monetary penalty upon Nukem in the event Nukem supplies others, including Praxair Electronics, with $B^{11}F_3$.

38.    This exclusive supply agreement with Nukem is a blatant effort to cripple Praxair Electronics' ability to compete against ATMI. If Praxair Electronics is to be an effective competitor in the supply of sub-atmospheric gas delivery systems, it must have a reliable source of high quality, high purity $B^{11}F_3$. Because Nukem controls the vast majority of the qualified $B^{11}F_3$, ATMI's exclusive supply agreement with Nukem, as a practical matter, denies Praxair Electronics the ability to serve as an effective competitor. Indeed, absent intervention by this Court, Praxair Electronics will soon find itself unable to supply many of its customers with sub-atmospheric systems for the delivery of $B^{11}F_3$.

39.    Praxair Electronics' last shipment of $B^{11}F_3$ from Nukem was received on or about October 23, 2007. Praxair Electronics' remaining inventory of Nukem-produced $B^{11}F_3$ will last only a few more months. For Praxair Electronics to obtain an additional supply of $B^{11}F_3$ from Nukem, it must provide advance notice of 4-8 weeks between the date of order and receipt of the $B^{11}F_3$.

40.    Praxair must provide its customers with notice as soon as it reasonably knows it can no longer supply qualified product. The uncertainty of supply of Nukem's qualified product is a serious business concern.

41.    Given Nukem's dominance of $B^{11}F_3$ output, Praxair Electronics finds itself in a perilous position, lacking a reliable alternative source of $B^{11}F_3$. Even if Praxair Electronics could

9

find such a source, it would still face the uncertain, costly and time-consuming process of having to qualify its new gas with customers. It is far easier for Praxair Electronics' customers to switch back to ATMI's SDS® using $B^{11}F_3$ from Nukem than to remain with Praxair Electronics and qualify the UpTime® system using $B^{11}F_3$ obtained from another source.

42.  As a result of ATMI's unlawful, exclusionary, and anticompetitive conduct, Praxair Electronics will likely lose customers and lose the opportunity to increase its sales and market share through competition. In addition, Praxair Electronics may lose customers in other business lines, because many customers prefer to obtain all of their products from a single source.

43.  As a result of ATMI's unlawful, exclusionary, and anticompetitive conduct, Praxair Electronics' goodwill and business reputation will suffer irreparable harm in that customers will see Praxair Electronics as unreliable.

ATMI's Misuse of its Patent in Certain European Countries and its Belgian Preliminary Relief

44.  As set forth above, Praxair obtained United States patents for its UpTime® system, while ATMI obtained United States patents and a patent in certain European countries for its VAC® system. Praxair and ATMI have been engaged in litigation regarding the scope, validity and purported infringement of these patents, as follows:

- In July 2003, ATMI sued Praxair in the United States District Court for the Southern District of New York, alleging that Praxair Electronics' UpTime® system violated certain of ATMI's patents pertaining to sub-atmospheric gas delivery systems. By order dated April 16, 2006, the court granted summary judgment in favor of Praxair on the ground that ATMI's patents were invalid and unenforceable on the ground that the claimed invention(s) were obvious. This judgment was affirmed on appeal by the United States Court of Appeals for the Federal Circuit.

- In December 2003, Praxair sued ATMI in the United States District Court for Delaware, alleging that ATMI's VAC® system infringed Praxair's patents for the UpTime® system. The jury agreed with Praxair that ATMI's VAC® system infringed Praxair's patents; however, post-verdict, the court held Praxair's patents unenforceable because of alleged inequitable conduct primarily by UOP, the original

patent holder whose rights Praxair acquired.  This matter is now currently on appeal before the United States Court of Appeals for the Federal Circuit.  Thus, at the present time, neither ATMI nor Praxair has any patent rights with respect to mechanical sub-atmospheric gas delivery systems in the United States, and both are free to produce, market, advertise and sell their respective systems in the United States.

- Having failed to restrict Praxair Electronics' competition in the United States through patent litigation, in August 2006—*a few months after a United States court determined that ATMI's patents were invalid*—ATMI filed suit in Belgium against Praxair, charging infringement of ATMI's limited European patent rights for sub-atmospheric gas delivery systems.  While the merits of this suit have not yet been addressed, in October 2006, ATMI obtained preliminary relief which restricted Praxair Electronics from engaging in advertising of its UpTime® product; however, Praxair Electronics was permitted to continue to commercialize its UpTime® system.  The geographic scope of the advertising ban was unclear.  Any breach of this order carried a penalty of €100,000 (approximately $150,000) per occurrence.

- Both Praxair and ATMI appealed the lower court's order, with Praxair objecting to the ban on advertising and ATMI objecting to the court's refusal to ban Praxair Electronics from commercializing its UpTime® product.  By order dated April 26, 2007, the Belgian appellate court upheld the restriction on Praxair Electronics' advertisement of its UpTime® and further barred its commercialization in those European countries where the patent has been registered (with any violation of its order with respect to commercialization carrying a penalty of €40,000 (approximately $60,000)) per occurrence.

45.    Notwithstanding the United States litigation invalidating ATMI's patents, as well as the geographically limited scope of ATMI's limited European patent rights, ATMI has engaged in unrestrained and unlawful efforts to utilize the preliminary relief that it obtained in the Belgium to adversely affect competition in the United States – an area that is supposed to be subject to free and

11

open competition, given the absence of any prevailing patent rights for mechanically-based sub-atmospheric gas delivery systems – and to further its monopoly unlawfully and extraterritorially. For instance, as reflected in its most recent 10-K, filed with the United States Securities and Exchange Commission, ATMI has taken the position that the Belgian court has issued an injunction "against the public marketing of the UpTime system *worldwide*."

46.    Based on what it argues is a global ban on advertising – even covering those countries, including the United States, where Praxair Electronics has an unfettered right to market and sell its UpTime® system – ATMI has aggressively and unlawfully sought to obstruct Praxair Electronics in its efforts to compete against ATMI. Examples of ATMI's overreaching, monopolistic activities with respect to enforcement of the Belgian preliminary injunction include the following:

a.    ATMI obtained a penalty order against Praxair, including a monetary penalty of €200,000 (approximately $300,000) for including an overview of the UpTime® technology (e.g., a product description, safety features, and product attributes) on its general website, located at the domain www.praxair.com, and which is hosted on servers located in the United States. ATMI sought and obtained the penalty order, notwithstanding the fact that the particular web pages about which ATMI complained contained a clearly visible disclaimer that read: "The UpTime® product family is not available in Belgium and any references to the UpTime® system set forth on this website are not intended for use in the Belgium market and/or by current or potential Belgium customers of Praxair." Praxair had previously removed all UpTime® references from its Belgian website, located at www.praxair.be (but initially failed inadvertently to disable a hyperlink to the www.praxair.com website). To avoid the imposition of further penalties, Praxair has been forced to remove all references to its UpTime® product line from its www.praxair.com website, thereby precluding customers in the United States, Asia and those European countries in which ATMI does not have patent rights from obtaining truthful information regarding UpTime® through the Praxair website. In effect, though Praxair Electronics has every right to compete in the United States,

12

including the right to compete by advertising and promoting its product in the United States, its fundamental right to engage in such competition through truthful speech, as guaranteed by the United States Constitution, has been and is currently being abridged, causing Praxair to suffer irreparable injury. Praxair is currently appealing the penalty order that ATMI obtained.

b.   ATMI has brought additional proceedings against Praxair in which it alleges further violations of the preliminary relief it obtained in Belgium. First, ATMI has claimed that an announcement of a scientific presentation relating to Praxair Electronics' UpTime® system, which was given by a Praxair Electronics employee at an October 16, 2007 conference in Taiwan (a country in which Praxair Electronics is fully entitled to sell and market the UpTime® system), and mentioned on two of Praxair Electronics' websites directed to technical presentations (at www.praxairtechforum.com and www.praxair.com/techforum), violated the Belgian court's preliminary relief. Additionally, ATMI has claimed that web pages of a third party (a firm known as Montgomery Research, Inc., located in San Francisco) which purportedly contain product brochures and other information regarding the UpTime® system violate the Belgian court's preliminary relief. ATMI has made this claim, despite the fact that Praxair Electronics neither owns nor controls Montgomery Research, Inc. or the content of its website.

47.    While these matters are still pending before the Belgian court, they further demonstrate the efforts that ATMI has undertaken to maintain its monopoly position around the world, including the United States, by overextending the scope and effect of its limited European patent.

48.    On or about January 16, 2008, ATMI attempted to take further preemptive and anticompetitive action by attempting to seize assets of Praxair, Inc. located in Belgium as a means to satisfy payment of the €200,000 penalty referenced above. After negotiations between the parties, ATMI agreed to forestall its efforts to seize the assets of Praxair but only until February 18,

13

1    2008. Thus, unless Praxair obtains relief from this Court, Praxair will suffer further injury from

2    ATMI's anticompetitive practices.

3        49.    The restrictions that ATMI has exerted over Praxair Electronics' advertising of its

4    UpTime® system—including restrictions whose effect goes far beyond the scope of ATMI's limited

5    European patent and are repugnant to the public policy of the United States, including the

6    fundamental policy of permitting persons to engage in lawful competition and to promote products

7    through free speech—are preventing customers from learning about Praxair Electronics' UpTime®

8    system, diminishing Praxair Electronics' goodwill, and causing Praxair Electronics to suffer

9    irreparable injury. Absent immediate relief, Praxair Electronics will continue to suffer such injuries

10   and, in the next few days, Praxair may be subjected to the seizure of its physical assets in Belgium.

11                          ATMI's Misuse of Patent Litigation

12       50.    On information and belief, ATMI has used patent litigation in both Europe and the

13   United States as a weapon to further its anticompetitive scheme against Praxair Electronics.

14       51.    On information and belief, ATMI either knew or should have known that its

15   American patents for mechanically-based sub-atmospheric gas delivery systems were invalid and

16   unenforceable.

17       52.    ATMI's patent litigation has injured Praxair, Inc. and interfered with Praxair

18   Electronics' current and/or prospective customers.

19       53.    On information and belief, ATMI's patent litigation has had the effect of sustaining,

20   or increasing, ATMI's unlawful monopoly and inhibiting competition.

21       54.    As a result of ATMI's patent litigation, Praxair Electronics will likely lose customers

22   and lose the opportunity to increase its sales and market share through competition. In addition,

23   Praxair Electronics may lose customers in other business lines, because many customers prefer to

24   obtain all of their products from a single source.

25                            Irreparable Injury To Praxair

26       55.    As a result of the various acts and practices described above, Praxair has suffered

27   and will continue to suffer irreparable injury in an amount incapable of ascertainment in the form of

28   lost sales and profits, injury to its reputation and goodwill and the limitation of its constitutionally-

14

1    guaranteed right to engage in lawful speech. Praxair has no plain, speedy or adequate remedy at

2    law for these injuries and, therefore, requires the issuance of preliminary and permanent injunctive

3    relief as more fully set forth below.

### COUNT 1

### Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2

6    56.    Praxair hereby incorporates each and every allegation set-forth in paragraphs 1 – 55

7    of this Complaint as if fully set-forth at length herein.

8    57.    ATMI possesses monopoly power in the global market for sub-atmospheric gas

9    delivery systems.

10    58.    ATMI has willfully acquired and maintained monopoly power in the relevant market

11    through exclusionary and anticompetitive conduct, acts, and practices, as described above.

12    59.    The above-described actions of ATMI constitute monopolization of the relevant

13    market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

14    60.    The above-described actions of ATMI directly injured Praxair and its business and

15    property, entitling it to preliminary and permanent equitable relief, as well as to recover threefold

16    the damages sustained (in an amount to be determined at trial), the cost of this suit, and reasonable

17    attorneys' fees.

### COUNT 2
### Attempted Monopolization in Violation of
### Section 2 of the Sherman Act, 15 U.S.C. § 2

20    61.    Praxair hereby incorporates each and every allegation set-forth in paragraphs 1 – 60

21    of this Complaint as if fully set-forth at length herein.

22    62.    ATMI specifically intended and intends to monopolize the market for sub-

23    atmospheric gas delivery systems. By virtue of the exclusionary and anticompetitive actions of

24    ATMI, as described above, there is a dangerous probability that ATMI will succeed in

25    monopolizing the relevant market.

26    63.    The above-described actions of ATMI constitute an attempt to monopolize the

27    market for sub-atmospheric gas delivery systems, in violation of Section 2 of the Sherman Act, 15

28    U.S.C. § 2.

15

COMPLAINT/DEMAND FOR A JURY TRIAL

64.    The above-described actions of ATMI directly injured Praxair in its business and property, entitling it to preliminary and permanent equitable relief, as well as to recover threefold the damages sustained (in an amount to be determined at trial), the cost of this suit, and reasonable attorneys' fees.

**COUNT 3**
**Conspiracy to Monopolize in Violation of**
**Section 2 of the Sherman Act, 15 U.S.C. § 2**

65.    Praxair hereby incorporates each and every allegation set-forth in paragraphs 1 – 64 of this Complaint as if fully set-forth at length herein.

66.    ATMI possess monopoly power in the market for sub-atmospheric gas delivery systems used in the manufacture of semiconductors.

67.    ATMI, together with its agents and unnamed co-conspirators, conspired to monopolize the global market for sub-atmospheric gas delivery systems.  By virtue of the exclusionary and anticompetitive actions of ATMI, as described above, as well as its agents and unnamed co-conspirators, ATMI has engaged in predatory and anticompetitive conduct that furthered its conspiracy to monopolize the global market for sub-atmospheric gas delivery systems.

68.    ATMI, its agents and its unnamed co-conspirators, have a specific intent to monopolize the market for sub-atmospheric gas delivery systems designed for the manufacture of semiconductors.

69.    The above-described actions of ATMI, its agents and its unnamed co-conspirators, constitute a conspiracy to monopolize the market for sub-atmospheric gas delivery systems designed the manufacture of semiconductors, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

70.    The above-described actions of ATMI directly injured Praxair in its business and property, entitling it to preliminary and permanent equitable relief, as well as to recover threefold the damages sustained (in an amount to be determined at trial), the cost of this suit, and reasonable attorneys' fees.

COMPLAINT/DEMAND FOR A JURY TRIAL

1
2
3

**COUNT 4**
**Unlawful Agreement in Restraint of Trade in**
**Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1**

4    71.    Praxair hereby incorporates each and every allegation set-forth in paragraphs 1 - 70

5    of this Complaint as if fully set-forth at length herein.

6    72.    The exclusive supply contract between Nukem and ATMI for the supply of $B^{11}F_3$

7    prevents Praxair Electronics from obtaining a gas necessary and critical to compete in the market

8    for sub-atmospheric gas delivery systems.

9    73.    ATMI's exclusive supply contract forecloses a substantial proportion of competition

10    in the relevant market because of the lack of meaningful alternative suppliers of $B^{11}F_3$ and the

11    expensive and time-consuming qualification process required by customers.

12    74.    ATMI's exclusive supply contract precludes meaningful entry into the relevant

13    market by other competitors, to the detriment of competition and to Praxair Electronics.

14    75.    ATMI's exclusive supply contract constitutes an unlawful restraint of trade and/or

15    group boycott in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

16    76.    The above-described actions of ATMI directly injured Praxair in its business and

17    property, entitling it to preliminary and permanent equitable relief, as well as to recover threefold

18    the damages sustained (in an amount to be determined at trial), the cost of this suit, and reasonable

19    attorneys' fees.

20
21

**COUNT 5**
**Declaratory Judgment That Belgian Preliminary**
**Relief is Unenforceable in the United States**

22    77.    Praxair hereby incorporates each and every allegation set-forth in paragraphs 1 - 76

23    of this Complaint as if fully set-forth at length herein.

24    78.    This is a claim for declaratory judgment brought pursuant to 28 U.S.C. § 2201 and

25    Rule 57 of the Federal Rules of Civil Procedure.

26    79.    There presently exists a real, live, actual and justiciable controversy between ATMI

27    and Praxair.

28

17

COMPLAINT/DEMAND FOR A JURY TRIAL

80.    ATMI has obtained preliminary equitable relief in a Belgian court that, as construed by ATMI, has placed serious and significant burdens upon Praxair Electronic's ability to market its UpTime® system, including forcing it to remove information regarding the UpTime® system from its website and subjecting Praxair to the potential seizure of assets.

81.    Accordingly, Praxair is entitled to a declaratory judgment declaring that:

a.    Praxair Electronics is permitted to market its UpTime® product on the website located at www.praxair.com or any other ".com" website;

b.    The preliminary relief issued by the Belgian court is not enforceable against Praxair outside of the European countries where ATMI's patent is registered, because it is repugnant to the public policy of the United States and the State of California, including the fundamental right of persons to engage in free speech and the right of potential customers to receive such speech;

c.    ATMI may not seize Praxair's assets in an effort to enforce the preliminary relief issued by the Belgian court;

d.    ATMI may not claim that the Belgian preliminary relief is operative against Praxair and/or its subsidiaries based on activities stemming from its ".com" website; and

e.    ATMI may not claim that the Belgian preliminary relief is operative anywhere but in the countries to which it by definition applies.

### COUNT 6
**Unlawful, Unfair or Fraudulent Business Practices**
**Cal. Bus. & Prof Code. §§ 17200 et seq.**

82.    Praxair hereby incorporates each and every allegation set-forth in paragraphs 1 - 81 of this Complaint as if fully set-forth at length herein.

83.    By reason of the foregoing, ATMI has engaged in "unlawful, unfair or fraudulent business practices" in violation of California Business and Professions Code §§ 17200 et seq.  The unlawful, unfair or fraudulent business practices by ATMI include, but are not limited to,  (i) interfering with Praxair Electronics'  supply of $B^{11}F_3$, a necessary component in the fabrication of semiconductors, which is one of the primary end-uses for sub-atmospheric gas delivery systems; (ii) misusing and abusing a patent registered in certain European countries and enforcement

18

COMPLAINT/DEMAND FOR A JURY TRIAL

proceedings related thereto to limit competition in the United States, Asia and parts of Europe; and

(iii) misusing patent litigation as part of an anticompetitive scheme against Praxair Electronics.

84.    As a result of ATMI's acts of unfair competition, Praxair has suffered injury to its business and property, and will continue to suffer injury in its business and property. Praxair is entitled to preliminary and permanent equitable relief prohibiting ATMI, as well as its employees, agents and servants, from engaging in such acts of unfair competition.

85.    As a result of ATMI's acts of unfair competition, ATMI has been unjustly enriched at Praxair's expense. Praxair accordingly is entitled to restitution of any and all amounts paid as penalties, as well as any property seized, pursuant to the Belgian court orders. Praxair also seeks recovery of its attorneys' fees, costs and expenses in the filing and prosecution of this action.

## COUNT 7

### Tortious Interference with Prospective Economic Advantage

86.    Praxair hereby incorporates each and every allegation set-forth in paragraphs 1 - 85 of this Complaint as if fully set-forth at length herein.

87.    By virtue of ATMI's conduct discussed herein, including, *inter alia*, entering into an exclusive supply contract with Praxair Electronics' supplier of $B^{11}F_3$, ATMI has tortiously interfered with the relationship between Praxair Electronics and Nukem.

88.    ATMI had knowledge of Praxair Electronics' business relationship.

89.    ATMI intentionally engaged in conduct designed to disrupt this business relationship.

90.    ATMI's conduct caused a disruption in this business relationship.

91.    ATMI's conduct was willful, oppressive, fraudulent and malicious, entitling Praxair to punitive damages.

92.    By reason of ATMI's conduct, Praxair has suffered and will continue to suffer damage and injury to its business and reputation, and will sustain serious losses of revenues and profits. Praxair has already suffered monetary damages in an amount to be determined.

19

COMPLAINT/DEMAND FOR A JURY TRIAL

### PRAYER FOR RELIEF

1.    That the Court adjudge and decree that Defendants have committed the violations alleged herein;

2.    That judgment be entered in favor of Praxair and against Defendants jointly and severally for all actual damages, together with the costs of this suit, prejudgment interest and reasonable attorneys' fees, and for any additional damages, penalties and other monetary relief provided by applicable law alleged herein, including but not limited to treble damages for:

    **a.**   Sales of sub-atmospheric delivery products lost due to Defendants' anticompetitive conduct;

    **b.**   Sales of products other than sub-atmospheric delivery products lost due to the impact of Defendants' anticompetitive conduct;

    **c.**   Damage to Praxair's reputation and goodwill with existing and potential customers due to Defendants' unlawful conduct;

    **d.**   All expenses, including attorneys' fees,  Praxair incurred in defending against ATMI's claim of patent infringement in the suit brought in the United States District Court for the Southern District of New York, as set forth in ¶ 44, *supra* and the attorneys' fees related to defending against ATMI's penalty proceedings in Belgium, as set forth in ¶ 44 - 46, *supra*; and

    **e.**   Any other damages Praxair suffered as a result of ATMI's anticompetitive conduct.

3.    Restitution of any gains ATMI unjustly received as a result of its unfair business practices, including but not limited to, any and all amounts paid as penalties, as well as any property seized, pursuant to the Belgium court orders.

4.    All costs Praxair incurs in pursuing this litigation, including attorneys' fees;

5.    All other damages to which Praxair is entitled;

6.    A declaratory judgment declaring that:

    **a.**   Praxair Electronics is permitted to market its UpTime® product on the website located at www.praxair.com or any other ".com" website;

COMPLAINT/DEMAND FOR A JURY TRIAL

**b.** The preliminary relief issued by the Belgian court is not enforceable against Praxair outside of the European countries where ATMI's patent is registered, because it is repugnant to the public policy of the United States and the State of California, including the fundamental right of persons to engage in free speech and the right of potential customers to receive such speech;

**c.** ATMI may not seize Praxair's assets in an effort to enforce the preliminary relief issued by the Belgian court:

**d.** ATMI may not claim that the Belgian preliminary relief is operative against Praxair and/or its subsidiaries based on activities stemming from its ".com" website; and

**e.** ATMI may not claim that the Belgian preliminary relief is operative anywhere but in the countries to which it by definition applies.

7.    That the Court enjoin and restrain Defendants, its agents, co-conspirators, employees, attorneys, successors and assigns and all persons in active concert or participation with them, from, in any manner, directly or indirectly, continuing, maintaining or renewing their monopoly, conspiracy to monopolize or attempt to monopolize the market for sub-atmospheric delivery products, from engaging in any other combination, conspiracy, contract, agreement, understanding or concert of action having a similar purpose or effect and from adopting or following any practice, plan, program or device having a similar purpose or effect, including but not limited to an order that:

**a.** Defendants be enjoined from enforcing the Belgian preliminary relief in a way that restricts the use, sale or marketing of sub-atmospheric delivery products beyond the limited geographic scope of the patent registered in certain European countries, including but not limited to any restrictions on advertising directed at customers outside the geographic area covered by the European patents;

**b.** Defendants be enjoined from seizing assets of Praxair from anywhere around the world or to attempting to obtain any other sanction without obtaining prior U.S. court approval, including collecting damages from Praxair or its divisions or subsidiaries for activities stemming from the ".com" website;

21

COMPLAINT/DEMAND FOR A JURY TRIAL

    c.   Defendants be enjoined from using their limited European patents to acquire a monopoly outside the geographic area covered; and

    d.   Defendants be enjoined from entering into or enforcing any contract with a supplier which prohibits that supplier from, or imposes any penalty on the supplier for, selling any component or raw material to Praxair for use with its sub-atmospheric delivery products, including but not limited to Nukem's sale of $B^{11}F_3$ to Praxair for use with its UpTime® products.

8.    That judgment be entered in favor of Praxair and against Defendants for such further relief as the Court may deem to be equitable, just and proper.

### JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all of the claims asserted in the Complaint so triable.

February 8, 2008

Respectfully submitted,

By _Stephen V. Bomse / MEM_

Stephen V. Bomse (Bar No. 40686)

steve.bomse@hellerehrman.com

HELLER EHRMAN LLP

333 Bush Street

San Francisco, CA  94104-2878

Telephone:  (415) 772-6000

Facsimile:  (415) 772-6268

Attorney for Plaintiff

Praxair, Inc.

COMPLAINT/DEMAND FOR A JURY TRIAL