


STEPHEN V. BOMSE (Bar No. 40686)
steve.bomse@hellerehrman.com
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: (415) 772-6000
Facsimile: (415) 772-6268

NATHAN P. EIMER (*Admitted Pro Hac*)
neimer@eimerstahl.com
ANDREW G. KLEVORN (*Admitted Pro Hac*)
aklevorn@eimerstahl.com
CHAD J. DOELLINGER (*Admitted Pro Hac*)
cdoellinger@eimerstahl.com
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Telephone: (312) 660 7600
Facsimile: (312) 692-1718

Attorneys for Plaintiff
PRAXAIR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PRAXAIR, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>ATMI, INC. and ADVANCED TECHNOLOGY MATERIALS, INC.,<br><br>                Defendants. | Case No.: C-08-00869 JW (HRL)<br><br>**DECLARATION OF JOE YOUNG IN SUPPORT OF PLAINTIFF'S REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[PUBLIC VERSION]**<br><br>Date:     April 21, 2008<br>Time:    9:00 a.m.<br>Ctrm:    8, 4th floor<br>Hon. James Ware |

MANUAL FILING NOTIFICATION OF DECLARATION OF JOE YOUNG IN SUPPORT OF PLAINTIFF'S REPLY SUPPORTING MOTION FOR PRELIMINARY INJUNCTION (CONFIDENTIAL VERSION); CASE NO. C-08-00869 JW (HRL)

04/09/2008  07:31   5128922113                FEDEX KINKOS 0723                      PAGE  03

I, Joe Young, declare and state as follows:

1. I am Joe Young, Business Manager – UpTime® Systems of Praxair Electronics. My declaration is based upon my personal knowledge and my responsibilities at Praxair.

**Qualification Process:**

2. Semiconductor fabrication is a precise, exacting process that requires suppliers to undergo rigorous and time-consuming qualification procedures before their product may be used in semiconductor fabrication.

3. Although the specifics of the $B^{11}F_3$ qualification process vary according to customers, a few general characterizations hold true across the industry. For instance, qualification and product risk assessment would include a review and test of the $B^{11}F_3$ (including the raw material source), the transfilling location, product specifications, delivery package/cylinder and all related parameters relating to the use of the dopant gas in the ion implantation process. The process also involves subjecting the $B^{11}F_3$ to a battery of tests using different sized lots of the material, starting with pilot-sized quantities and ending with a full-scale production run. The process also usually involves shutting down a production line for testing.

4. This extensive qualification process is necessary because of the substantial risk of using a product that contains an impurity. The consequences of introducing even a minor impurity into a semiconductor production line could be significant to our customers. A minor contamination that leaves even a single batch of chips unusable could result in hundreds of thousands of dollars of loss for an average-sized manufacturer. A large manufacturer could lose millions of dollars for every few hours the production lines are down.

5. Because of these risks, customers require suppliers to demonstrate that any change in raw material sources, processing flows, equipment, metrology, packaging or product specifications will not have an effect on the final product. In fact, customers typically require a dopant gas supplier to re-qualify its gas if the location that the transfilling of product takes place (*i.e.*, where the gas is transferred from larger cylinders (usually holding 20 kilograms of gas) to smaller cylinders or gas delivery systems) or the size of the cylinder changes. Moreover, if a particular supplier's previously qualified gas product is not used continuously in a customer's process (*i.e.*,

2

CASE NO. C-08-00869 JW (HRL); DECLARATION OF JOE YOUNG IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

another supplier's product is used in the interim) and the gap in use continues for a period of time, then the customer may require the previously qualified product to be re-qualified. This is in part because, over time, customers may have made changes to their fabrication process or the source material may have changed.

6. I have reviewed the history of Praxair's introduction of the UpTime® delivery system. Based upon my review, since Praxair began selling the UpTime® delivery system the average time historically for a customer to qualify a $B^{11}F_3$ source has been approximately eight months. Although one or two Praxair customers have successfully qualified a dopant gas supplier in roughly three months, this is unusual; in contrast, other customers have taken as long fifteen months to qualify $B^{11}F_3$. This qualification process can also cost as much as $100,000.

REDACTED

---

**Praxair's Acquisition of $B^{11}F_3$:**

8. Because NUKEM GmbH ("NUKEM") was the only source of $B^{11}F_3$ usable in mechanically-based gas delivery systems when Praxair began marketing the UpTime® system in 2003, Praxair had no choice but to qualify all its customers with $B^{11}F_3$ supplied by NUKEM.

9. Boron Products began to produce $B^{11}F_3$ useable in mechanically-based delivery systems in or around 2005.

10. In an effort to obtain a second source of $B^{11}F_3$, Praxair attempted to, and did, qualify Boron Products' $B^{11}F_3$ with a handful of its more recent customers beginning in 2006. As a result, Praxair purchased a small amount of $B^{11}F_3$ from Boron Products in 2007. These purchases totaled roughly    REDACTED    and constituted just over REDACTED of the total $B^{11}F_3$ that Praxair purchased last year. NUKEM, by contrast, accounted for    REDACTED    or REDACTED of Praxair's $B^{11}F_3$ purchases in 2007. Of the UpTime® systems that Praxair sold in 2007, only about REDACTED contained Boron Products' $B^{11}F_3$. Historically, Praxair has purchased the following amounts of NUKEM-sourced and Boron Products-sourced $B^{11}F_3$:

| Year | REDACTED | REDACTED | REDACTED |
|------|----------|----------|----------|
| 2005 | | | |
| 2006 | | | |
| 2007 | | | |

REDACTED

### Praxair's Growth in the Market:

15. Praxair entered the sub-atmospheric gas delivery system market in 2003 with the introduction of its UpTime® delivery system.

16. Based on Praxair's innovation, responsive service and increased value to the

4

CASE NO. C-08-00869 JW (HRL); DECLARATION OF JOE YOUNG IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

customer, its sales of the UpTime® delivery system grew rapidly. For instance, in 2004, sales for the UpTime® delivery system were around REDACTED growing to REDACTED in 2005, REDACTED in 2006 and REDACTED in 2007.

**Switching Source Material:**

17. Praxair's customers are very concerned about the source of the dopant gases, including $B^{11}F_3$, delivered via the UpTime® system. In fact, some customers have written change control policies requiring a supplier, such as Praxair, to provide prior written notice – in some cases, as long as a year – of its intent to make any change in the raw material provided, transfilling location, processing flows, equipment, metrology, packaging, product specifications, etc.

18. The qualification process Praxair's customers would be forced to undertake to re-qualify Praxair's UpTime® delivery system with Boron Products' $B^{11}F_3$ would again consist of the lengthy, time-consuming and expensive process described above. We would expect this process of re-qualifying our existing customers with Boron Products' $B^{11}F_3$ to take up to nine months and possibly as long as a year or more.

19. As mentioned above, a qualification does not last in perpetuity; any change in the dopant gas or delivery system, or a gap in usage of a particular dopant gas source, typically requires re-qualification by the supplier. Accordingly, ATMI's past qualification of a material is not a substitute for Praxair's qualification of the same material. A customer that had qualified ATMI's sub-atmospheric gas delivery systems using Boron Products sourced $B^{11}F_3$ would still require separate qualification of Praxair's UpTime® system using Boron Products sourced $B^{11}F_3$.

20. Asking a customer to qualify Boron Products as a new source of $B^{11}F_3$ poses a serious risk to Praxair's continued business relationship with that customer. Due to the costs, disruption and time required for a customer to qualify a new material supplier, a customer that has qualified Praxair's UpTime® system using NUKEM's $B^{11}F_3$, if faced with the prospect of having to switch to another source of $B^{11}F_3$ (*e.g.*, Boron Products), may simply abandon Praxair's UpTime® system to avoid a burdensome re-qualification process and return to ATMI, where the customer can use already-qualified NUKEM-sourced gas using an ATMI sub-atmospheric gas delivery system which had been previously qualified – a less burdensome process than qualifying a new source

5

1  material.

2

3

4

5                                       **REDACTED**

6

7

8

9

10

11  I declare under penalty of perjury that the foregoing is true and correct.

12

13  Executed on April 9, 2008.               _____/s/ Joe Young_____

14                                            Joe Young

15

...

28

---

CASE NO. C-08-00869 JW (HRL); DECLARATION OF JOE YOUNG IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

6